USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY PIANTIERI,

Plaintiff,

-against-

UNITED FEDERATION OF TEACHERS and MICHAEL MULGREW,

Defendants.

23-CV-09376 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Anthony Piantieri brings suit against his former employer, the United Federation of Teachers ("UFT") and Michael Mulgrew, UFT's President (together, "Defendants"), for employment discrimination under Title VII of the Civil Rights Act ("Title VII") and the New York City Human Rights Law ("NYCHRL"). Before the Court is Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

### I. RELEVANT FACTS[1]

This is another in a mounting body of discrimination cases stemming from an employee's refusal to receive the COVID-19 vaccine. UFT is the labor union representing teachers in New York City public schools, and Defendant Mulgrew is its President. Statement of Facts ¶¶ 1–2. Piantieri was the UFT's Chief Financial Officer ("CFO") between 2019 and 2021. *Id.* ¶ 5.

[1] The following facts are taken from the Parties' Rule 56.1 Statements and Counterstatements. *See* Dkt. No. 46 ("Def. Rule 56.1"); Dkt. No. 52 ("Pl. Counter Rule 56.1"); Dkt. No. 56 ("Statement of Facts"), and are either undisputed or taken in the light most favorable to Plaintiff. The Court will refer to the parties' memoranda in support of and in opposition to Defendants' motion as follows: Dkt. No. 42 ("Mot."); Dkt. No. 54 ("Opp."); Dkt. No. 55 ("Reply"); Dkt. No. 60 ("Supp. Mot."); Dkt. No. 61 ("Supp. Opp.").

Before his tenure at the UFT, Piantieri worked for nearly three years at AccessMatters, a non-profit organization that provides family planning and sexual health services, including referrals for abortion services. *Id.* ¶ 44; Pl. Counter Rule 56.1 ¶ 59; *see* Dkt. No. 43-10. Before that, between 2013 and 2015, Plaintiff was a senior executive at Planned Parenthood. *See* Dkt. No. 43-1 ("Piantieri Tr.") 137:7–24; Pl. Counter Rule 56.1 ¶ 54.

**A. Relevant COVID-19 Policies**

In August 2021, after vaccines for COVID-19 became widely available for adults and New York City began to plan for the full re-opening of its public schools for the 2021–22 school year, the New York City Department of Health and Mental Hygiene issued an order mandating that all New York City Department of Education ("DOE") employees working in person in a DOE school receive at least one shot of an authorized COVID-19 vaccine, with no exceptions or accommodations. Statement of Facts ¶ 11; *see* Dkt. No. 44-1 (the "Vaccine Mandate" or "Mandate"). On behalf of its members, the UFT negotiated aggressively with the DOE to revise the Mandate to provide for certain medical and religious exemptions. Statement of Facts ¶¶ 12–13. Despite its efforts, the parties reached an impasse, *see* Dkt. No. 44-2, and mediation was unsuccessful, but the UFT prevailed in arbitration proceedings held in September 2021. Statement of Facts ¶¶ 14–17. The arbitration award required DOE to create a process for medical and religious exemptions to the Mandate and granted appeal rights to any DOE employee denied an exemption. *Id.* ¶¶ 17–18. Like the Mandate itself, the arbitration award did not apply to the UFT itself, nor to its employees who were not also DOE employees. Def. Rule 56.1 ¶ 19.

The UFT had its own COVID-19 vaccine policy, modeled on the DOE's, which required its employees to provide proof of full vaccination by November 15, 2021, unless they had been approved for a medical or religious exemption ("UFT COVID-19 Policy" or the "Policy"). *Id.*

¶¶ 21–23; *see* Dkt. No. 45-3. Any exempted employee was required to submit weekly COVID-19 tests and to wear an approved mask at work. Def. Rule 56.1 ¶ 26. Per the Policy, employees who sought exemptions could submit written requests to an independent arbitrator (Barry Peek) explaining the medical or religious basis for the exemption; Peek evaluated and ruled on the requests without input from any UFT representative. *Id.* ¶¶ 23, 27.[2]

**B. Piantieri's Request for Exemption**

On October 6, 2021, Piantieri requested an exemption from the UFT's COVID-19 Policy. His written exemption application explained that he is a life-long Catholic whose sincerely held beliefs preclude him from receiving the COVID-19 vaccine. *See* Dkt. No. 43-4 ("Request for Exemption"). In particular, Piantieri expressed that taking the vaccine would violate religious beliefs that require maintaining bodily sanctity or integrity and opposing abortion under any circumstances. *Id.* at 3, 5. These beliefs precluded the COVID-19 vaccine in particular because, Piantieri claimed, the mRNA technology altered a recipient's genes and the vaccines contained cells from aborted fetal tissue. Statement of Facts ¶¶ 28–31, 36, 45.[3] Piantieri later testified that he has "always objected to abortion and anything related to it." Piantieri Tr. 138:12–14.

[2] Piantieri purports to dispute this fact by stating that he "has no way of knowing whether this is true or not." Pl. Counter Rule 56.1 ¶ 27. Nonmovants, however, cannot rebut a fact submitted as undisputed by a moving party for summary judgment by asserting lack of knowledge or insufficient information to form a belief as to the statement in question. *E.g.*, *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); *see also AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Serv. Inc.*, No. 06-CV-02142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (explaining that "[a] nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them").

[3] Piantieri later acknowledged at his deposition that the vaccines do not contain fetal cells, although certain of the available vaccines were tested on a cell line that was originally derived from aborted fetal tissue. Statement of Facts ¶ 29; *see* Piantieri Tr. 305:18–306:11.

The arbitrator adjourned Piantieri's first session to allow Plaintiff to obtain a letter from his parish priest in support of his request, which Piantieri did not provide. Statement of Facts ¶¶ 32–33. The arbitrator ultimately denied his request for a religious exemption from the Policy. *Id.* ¶ 34.

### C. Piantieri's Termination

Mulgrew and Piantieri had numerous discussions about Piantieri's vaccination status. *See* Piantieri Tr. 57:5–58:24. During one such discussion, Piantieri shared his concerns about the COVID-19 vaccine with Mulgrew—namely, that the vaccines used aborted fetal tissues and that the mRNA technology used changes spike proteins in the recipient's body. Statement of Facts ¶ 36. In response, Mulgrew offered to connect Piantieri with doctors who could explain the science behind the mRNA vaccine in further detail, but the two did not discuss whether or how Piantieri's mRNA-related concerns might conflict with his asserted religious beliefs: Mulgrew simply "didn't ask and [Piantieri] didn't say." *Id.* ¶¶ 37–39. In his Complaint and throughout this suit, Piantieri has framed Mulgrew's offer as demeaning his religiosity or the sincerity of his religious beliefs. *See, e.g.*, Piantieri Tr. 204:4–15; Dkt. No. 1 ("Compl.") ¶ 22; Opp. at 6.

Despite that framing, Piantieri has also testified that Mulgrew gave his best efforts to keep Piantieri as CFO, and that no one at UFT wanted him to leave his post. Statement of Facts ¶ 51; Piantieri Tr. 57:19–24, 156:7–157:7. To that end, Mulgrew told Piantieri that he was going to appoint an internal, interim CFO with the hope that Piantieri's circumstances would change and he would be able to return as CFO. Statement of Facts ¶¶ 52–53.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on October 24, 2023, generally alleging that Defendants failed to accommodate his sincerely-held religious objections to the COVID-19 vaccine and discriminated against him by terminating his employment when he refused to be vaccinated.

Dkt. No. 1. On February 26, 2024, Defendants filed their Answer to the Complaint. Dkt. No. 11. Following discovery and several unsuccessful attempts at mediation, Defendants filed their motion for summary judgment, generally arguing that Plaintiff has failed to establish a *prima facie* claim for religious discrimination or failure to accommodate under Title VII or NYCHRL. Dkt. Nos. 41–42. The motion was fully briefed as of January 2026, *see* Dkt. Nos. 54–55, but the Court granted Defendants' request for supplemental briefing in light of the Second Circuit's recent opinion in *Bergin v. New York State Unified Court System*, 182 F.4th 203 (2d Cir. 2026). Dkt. No. 58. Following supplemental briefing, *see* Dkt. Nos. 60–61, the motion is now before the Court for decision.

## DISCUSSION

## I. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).[4]

The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If that burden is met, the nonmoving party must do more than raise "some metaphysical

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

doubt as to the material facts" and "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").

Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). Where the parties purport to identify disputed facts but with only semantic objections or by asserting irrelevant facts, the Court will not consider them sufficient to defeat summary judgment. *See Baity*, 51 F. Supp. 3d at 418–19.

Although the Second Circuit has warned district courts to be "especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue," *Chertkova v. Conn. Gen. Life. Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996), plaintiffs cannot rest on "conclusory allegations to resist a motion for summary judgment," and must "show more than some metaphysical doubt as to the material facts," *Gorzynski v. JetBlue*

*Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). The Supreme Court has instructed that courts are not to treat discrimination any "differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## II. OVERVIEW OF APPLICABLE LAW

### A. Title VII

Title VII forbids an employer's refusal to hire, termination, or other discrimination against a person because of the person's religion. *See* 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j). "Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023).

### B. NYCHRL

Similar to Title VII, NYCHRL makes it unlawful for an employer to discharge or discriminate against an employee "in compensation or in terms, conditions[,] or privileges of employment" because of the employee's "creed." N.Y.C.H.R.L. § 8-107(1)(a)(3). It further forbids the imposition "upon a person as a condition of . . . retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person." *Id.* § 8-107(3)(a).

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS

Plaintiff claims that Defendants violated Title VII and NYCHRL by discriminating against him based on protected religious beliefs. Because UFT complied with its nondiscriminatory Policy—which applied with equal force to religious and non-religious employees and specifically provided for religious exemptions—Plaintiff has failed to plausibly support his discrimination claims.

### A. Applicable Law

To establish a *prima facie* case of religion-based employment discrimination under Title VII, a plaintiff must show that: (1) he was a member of a protected class; (2) he was "qualified" for his position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discriminatory intent. *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 522 (S.D.N.Y. 2019). A plaintiff may also mount a disparate impact claim by alleging facts that "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020).

To state a *prima facie* NYCHRL discrimination claim, in contrast, a plaintiff need only show that he was treated "less well" due to membership in a protected class. *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024); *see also Kim v. Regeneron Pharms., Inc.*, No. 24-CV-05234 (LAP), 2026 WL 820603, at *4 (S.D.N.Y. Mar. 25, 2026) (framing NYCHRL's pleading standard as more lenient than Title VII's). A defendant may still be entitled to summary judgment, however, if the record shows that "discrimination played no role in its actions." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 & n.8 (2d Cir. 2013).

**B. Discrimination Played No Role in Piantieri's Termination**

While it is unclear to the Court, either from the Complaint or Plaintiff's briefing on summary judgment, whether Piantieri advances a pure discrimination or disparate impact theory (if any), either would fail under both Title VII's standard or NYCHRL's more lenient standard. Short of Plaintiff's rhetoric, there is no evidence that Piantieri was treated less well because of his religious beliefs or that discrimination played any role in his termination.

To support an inference of discrimination, a plaintiff may rely on "direct evidence of discriminatory animus," *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022), or "circumstances giving rise to an inference" of discrimination, *King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024). Direct evidence is evidence that "the employer's motivation was discriminatory on its face," including "statements or actions by the employer's decisionmakers . . . that may be viewed as directly reflecting the alleged discriminatory attitude." *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 149 (2d Cir. 2024) (emphases omitted). Circumstances giving rise to an inference of discrimination may include "disparate treatment among similarly situated employees." *Radwan*, 55 F.4th at 132.

*First*, Piantieri points to the following alleged statements as establishing discrimination: (1) Mulgrew's statement to Piantieri that "no Catholic Christian member is getting an exemption" from the Policy; (2) Mulgrew's offer to connect Piantieri with a doctor who could explain the science behind mRNA technology; and (3) UFT's former CFO's (David Hickey) purportedly mocking statements that he would "baptize" Plaintiff after receiving the shot to absolve him. Compl. ¶¶ 22–24; Statement of Facts ¶ 58; Pl. Counter Rule 56.1 ¶ 70; Piantieri Tr. 205:21–25; Opp. at 6.[5] This argument fails for a number of reasons, chief among them that such

[5] Plaintiff also appears to have claimed that an unknown co-worker said that Plaintiff was killing people by refusing the vaccine, but is unable to identify when, where, or by whom the statement was

"stray remarks . . . do not constitute sufficient evidence to make out a case of employment discrimination" on a disparate-treatment theory, *Naumovski v. Norris*, 934 F.3d 200, 216 (2d Cir. 2019), where "other indicia of discrimination" are not present, *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). *See also De Souza v. New York*, 824 F. Supp. 3d 336, 365 n.11 (S.D.N.Y. 2026) (observing that the Second Circuit has used the "stray remark" characterization "to explain that the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination" and that "the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination").

Nor can Plaintiff connect any of these statements to the formation or enforcement of the Policy, or to his termination specifically. As to Defendant Mulgrew's statement that "no Catholic Christian member is getting an exemption," the record demonstrates that his remark reflects a mistaken belief that Catholics were—as a matter of fact—not being granted exemptions. Mulgrew did not control the implementation of the Policy once it was adopted, and it is undisputed that at least one Catholic UFT employee received a religious exemption. Def. Rule 56.1 ¶¶ 27, 77. A review of the full factual record belies any suggestion of discriminatory undertone with respect to that statement—or with respect to Mulgrew's offer to connect Piantieri with a doctor. To the contrary, ample evidence suggests that Mulgrew and other high-level insiders at UFT expressed discontent at Piantieri's situation and tried to help him so that he could remain in his position. *See, e.g.*, Piantieri Tr. 57:19–24 (testifying that Mulgrew tried to keep him "on board"); 156:7–157:7 (testifying that "no one [at UFT] wanted [him] to leave" "up until

made. Nor is there any indication that this unknown and unidentified co-worker played any role in enforcing the Policy or in Piantieri's termination. Statement of Facts ¶ 58; Piantieri Tr. 245:4–25.

the day [he] left"); Dkt. No. 44 ¶ 29 (Mulgrew told Plaintiff that he would appoint an internal interim CFO and not seek to fill Plaintiff's position from outside to give him a chance to change his mind). The same is true of Hickey's comment about baptizing Piantieri: it was clearly made in jest, and in the context of encouraging Piantieri to stay at UFT. *See* Piantieri Tr. 75:25–76:10 (Hickey spoke with Piantieri "to see if there [was] anything that he could do to help [Plaintiff's] situation" and get him to change his mind). Even if a jury could view Hickey's comment as reflecting some demeaning of Piantieri's religious beliefs, there is no evidence that Hickey had any role in granting or denying exemptions from the Policy or in Piantieri's termination.

*Second*, Piantieri does not (and cannot) point to any deviation from the Policy's uniform application, including its specific allowance for religious exemptions if approved by the independent arbitrator. Nothing in the record suggests that Defendants advanced the Policy selectively against religious individuals generally, adherents of any particular religion or doctrine, or individuals belonging to any protected class. Indeed, Piantieri was one of nearly thirty UFT employees who applied for exemptions from the Policy, and at least nine of those requests were granted. Def. Rule 56.1 ¶ 77. Eleven other employees were terminated for failure to comply with the Policy—eight of whom were denied requested exemptions. *Id.* There is also no evidence that Piantieri was denied an exemption because his request was predicated on religious beliefs; other religious exemptions were granted, including for another Catholic UFT employee who remained employed by UFT until last year. *Id.* ¶ 76.

*Third*, and relatedly, Piantieri's conclusory allegations that some unspecified secular UFT employee was permitted to work on a fully remote basis as an accommodation for declining the vaccine is insufficient to defeat summary judgment. *See* Piantieri Tr. 62:23–64:20, 87:6–12, 88:25–89:5, 241:10–20; Statement of Facts ¶ 54. While Piantieri is of course entitled to

reasonable inferences drawn in his favor as the nonmoving party on summary judgment, the Court is not constrained to accept hallway whispers as gospel. Piantieri's only basis for his belief that such a comparator exists is what he claims other employees told him in his capacity as an HR supervisor, but he is unable to identify a single employee who purportedly shared this information, much less the purported comparator employee. Statement of Facts ¶ 54. Piantieri provides no affidavits or deposition testimony from any potentially relevant witness; accordingly, the testimony is inadmissible hearsay and is not properly accepted on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123–24 (2d Cir. 2001) (affirming district court's refusal to consider anecdotal hearsay evidence on summary judgment); *see also Marseille v. Mount Sinai Health Sys.*, No. 18-CV-12136 (VEC), 2021 WL 3475620, at *5 (S.D.N.Y. Aug. 5, 2021), *aff'd sub nom. Marseille v. Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981 (2d Cir. Oct. 26, 2022) (explaining that the plaintiff is not permitted to rely on his "own unilateral assumptions about how coworkers outside of [his] protected class[] were treated").

Piantieri's failure to identify anyone who was permitted to continue as a UFT employee despite refusal to vaccinate and denial of a requested exemption cuts strongly against his claim. Statement of Facts ¶ 55; *see, e.g.*, *De Souza*, 824 F. Supp. 3d at 364–67, 374–75 (finding that a religious employee terminated for missing work to observe Sabbath after her religious accommodations were denied failed to identify any similarly situated employees who were allowed to work with accommodations, and thus failed to state a claim for religious discrimination under both Title VII and NYCHRL); *Pesok v. Hebrew Union Coll.—Jewish Inst. of Religion*, 235 F. Supp. 2d 281, 288 (S.D.N.Y. 2002), *aff'd sub nom. Pesok v. Lutwak*, 86 F. App'x 479 (2d Cir. 2004) (dismissing discrimination claims where there was no evidence that

similarly situated employees were treated differently from the plaintiff); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64–65 (2d Cir. 1997) (explaining that the plaintiff did not satisfy fourth element of *prima facie* case because she failed to show that she was treated differently than persons outside the relevant protected class); *Adeniji v. Admin. for Child. Servs., NYC*, 43 F. Supp. 2d 407, 425–26 (S.D.N.Y. 1999), *aff'd sub nom. Adeniji v. Admin. For Children's Servs.*, 201 F.3d 430 (2d Cir. 1999) (same); *Desir v. Bd. of Co-op Educ. Servs.*, 803 F. Supp. 2d 168, 180 (E.D.N.Y. 2011), *aff'd*, 469 F. App'x 66 (2d Cir. 2012) ("To prove that the employer subjected a plaintiff to disparate treatment . . . the plaintiff must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself.").

There is no genuine dispute that (1) Piantieri refused to receive a vaccination as delineated in the Policy; (2) the Policy expressly allowed for medical and religious exemptions, administered by an independent arbitrator who granted at least some religious exemptions, including for an employee identified as part of the same religious group claimed by Piantieri; (3) Piantieri's requested exemption was denied by the independent arbitrator without the involvement of any UFT executive; and (4) Piantieri was terminated in accordance with that Policy, along with every other employee who was denied an exemption (of any kind) and still refused vaccination. Because Piantieri has not shown that religious discrimination played any part in the adverse action, nor that he was treated "less well" due to his religious beliefs, he has not made out a *prima facia* case of religious discrimination under Title VII or under NYCHRL, and the Court need not proceed to the next steps under the *McDonnell Douglas* framework. In any event, those steps would also favor Defendants because Piantieri has not shown that the reasons for Piantieri's termination are "false, and that more likely than not discrimination was the real reason" for the termination. *See Lawless v. TWC Media Sols., Inc.*, 487 F. App'x 613,

616 (2d Cir. 2012) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).[6] Therefore, Defendants' motion for summary judgment is GRANTED with respect to any discernible disparate-impact or discrimination claims.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE-TO-ACCOMMODATE CLAIMS

Piantieri next argues that Defendants failed to accommodate his sincerely held religious objection to the COVID-19 vaccine and instead terminated his employment with insufficient process when he refused to be vaccinated—also in violation of Title VII and NYCHRL. *See* Opp. at 7.

### A. Applicable Law

The Second Circuit evaluates failure-to-accommodate claims in two steps. At step one, the Court asks whether the plaintiff has mounted a *prima facie* case of religious discrimination. *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185–86 (2d Cir. 2025). If so, at step two, the Court determines whether the employer "offer[ed] him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id.* at 186. Because Piantieri has failed to mount a *prima facie* case of religious discrimination, the Court need not address step two (and all parties agree that no further accommodation was offered once Piantieri's religious exemption request was denied).

---

[6] Even if Piantieri's religious discrimination claims were adequately pled (which is not clear) and had merit (which they do not), Piantieri appears to have abandoned them by wholly failing to address Defendants' arguments in its opposition to their motion, other than by vague rhetorical references to the statements of Mulgrew and others, without any effort to connect them to any discriminatory action. The Court may dismiss the claims on that basis alone, but it has addressed them here for completeness and to provide Defendants with certainty in the resolution of any discernible allegations mounted against them. *See Simon v. City of New York*, No. 14-CV-08391 (JMF), 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015) (collecting cases holding that a plaintiff abandons claims when it fails to address a defendant's argument on a motion, regardless of any potential merit).

Under the traditional test, a plaintiff could make a *prima facie* case under Title VII or NYCHRL by alleging "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001). Title VII's traditional *prima facie* test, however, has recently been modified in this Circuit to remove the "inform" requirement and to require a showing that the employer was "motivated," at least in part, "by the desire to avoid offering a religious accommodation." *Bergin v. New York State Unified Ct. Sys.*, 182 F.4th 203, 206 (2d Cir. 2026). The Circuit further amended *Bergin* to clarify that it did not establish a "new, heightened discriminatory motive requirement" for failure-to-accommodate cases: "an employee asserting a failure-to-accommodate claim need not show that an employer's denial of an accommodation was motivated by discriminatory *animus* against religion," but must show "the denial was 'because' of the employee's religion" as opposed to some innocuous reason. *Bergin v. New York State Unified Ct. Sys.*, No. 25-721, 2026 WL 2724974, at *4 n.2 (2d Cir. Sept. 15, 2026) ("*Bergin*").

Thus, to make a *prima facie* Title VII failure-to-accommodate case, a plaintiff must demonstrate (1) that he actually required an accommodation of his religious practice, and (2) that the employer's desire to avoid the prospective accommodation was a motivating factor in (3) an adverse employment decision. *Id.* at *5.

**B. Desire to Avoid Accommodation Played No Role in Piantieri's Termination**

The Court finds no evidence that Piantieri's termination was, in any way, motivated by a desire to avoid providing him with a religious accommodation. To the contrary, UFT created a policy that specifically allowed for accommodation of sincerely held religious beliefs, and nine UFT employees were granted an accommodation that would permit them to submit weekly

COVID-19 test results and wear a mask in lieu of vaccination, some based on medical exemptions and some based on religious exemptions. Def. Rule 56.1 ¶ 77; *see also* Dkt. No. 45 ¶¶ 6–9. Unlike those employees, however, the arbitrator—independently and with no input from UFT—determined that Piantieri was not entitled to a religious exemption. *See* Statement of Facts ¶ 34.

The Court agrees with Defendants that *Kane* is inapplicable on the present facts. There, New York City public school teachers brought a Free Exercise challenge to the DOE's COVID-19 vaccine mandate (which, after UFT's successful fight in arbitration, provided for medical and religious exemptions), and the Second Circuit found that the mandate was facially neutral and generally applicable. *Kane v. DeBlasio*, 19 F.4th 152, 164 & n.12 (2d Cir. 2021). As to plaintiffs' as-applied challenge, however, the Circuit found that the procedures used to review religious accommodations requests failed strict scrutiny review because they impermissibly invited inquiry into "the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*" and because the exemption procedure was inconsistently applied. *Id.* at 168–69 (emphasis in original).

This case differs in many key respects. As a preliminary matter, the UFT's policy is not the same as the DOE's policy, and Piantieri does not mount any constitutional challenge (nor could he, because the UFT is a private entity not bound by the First Amendment). In any event, unlike the "exceedingly narrow" situation presented by *Kane*, Piantieri's religious beliefs were not diminished through comparison to those of other members of his faith. 19 F.4th at 167. The arbitrator adjourned the first hearing to give Piantieri an opportunity to obtain a letter from his parish priest (not because it was required, but as an opportunity for Piantieri to bolster his questionable claim that his beliefs were sincerely held). When Piantieri declined the

opportunity, the arbitrator proceeded on track: He did not attempt to question Piantieri's "interpretation[] of [his] creed[]" or require a demonstration that his beliefs were central to Catholicism—further evidenced by the same arbitrator's granting of an exemption to another Catholic UFT employee despite the Pope's clear public support for COVID vaccination by practicing Catholics. *Id.* at 168; *see Collins v. City Univ. of N.Y.*, No. 21-CV-09544 (NRB), 2023 WL 1818547, at *9 n.7 (S.D.N.Y. Feb. 8, 2023) ("Here, unlike in *Kane*, the sincerity of [plaintiff's] religious beliefs was not evaluated against someone else's publicly expressed religious views, nor does [plaintiff] allege that [defendant] sometimes strictly adhered to its evaluation policies and at other times apparently ignored them."). The Policy allows for exemptions for those with sincerely held beliefs, and, as explained many times over, Piantieri has pointed to no showing of animus to "render the [Policy] non-neutral." *Collins*, 2023 WL 1818547, at *8; *see also id.* (finding no animus where "the vaccination mandate at issue 'is designed to further the compelling objective of permitting schools fully to reopen'" (quoting *Kane*, 19 F.4th at 172)).

Tellingly, the bulk of the parties' primary briefing focuses on the sincerity of Piantieri's beliefs, which—while this Court declines to probe that issue at summary judgment on the present facts, and need not to resolve the motion[7]—is perfectly appropriate for an employer or, in this case, an arbitrator, to consider. *Bonilla v. City of New York*, No. 22-CV-07113 (AT), 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("[T]he panel asked appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held, not whether they were objectively legitimate."); *Mora v. New*

[7] In any event, Defendants point to ample evidence on which the arbitrator could have relied to reasonably determine that Plaintiff's claimed basis for refusing COVID vaccination specifically was not a "sincerely held" religious belief. *See* Reply at 9–10 (collecting evidence).

*York State Unified Ct. Sys.*, No. 22-CV-10322 (VB), 2023 WL 6126486, at *11 (S.D.N.Y. Sept. 19, 2023) (similar); *Ventresca-Cohen v. DiFiore*, 205 N.Y.S.3d 532, 535 (3d Dep't 2024) ("[An employer] could and did rationally conclude that an applicant's continued and/or contemplated use of other medications or vaccinations tested on fetal cell lines . . . while refusing to take the COVID-19 vaccination on that very basis, reflected an inconsistency undermining the sincerity of that applicant's religious beliefs.").

Piantieri was denied an accommodation and terminated solely as a function of the Policy working as designed: When his request for a religious exemption was denied, Piantieri declined to provide proof that he was vaccinated as required by the Policy. *See* Dkt. No. 45 ¶ 8. Piantieri appears to argue that Defendants should have provided a special further accommodation for him despite the independent arbitrator's decision that he was not entitled to an accommodation because he had not demonstrated sincerely held religious beliefs that precluded his receipt of *any* COVID vaccine. But Plaintiff has provided no legal support for the notion that an employer is required to establish multiple rounds of review for a requested religious accommodation. Moreover, for the many reasons explained here and *supra*, there is no reasonable prospect a jury could find that there were any nefarious discriminatory motivations behind the arbitrator's denial of an exemption or Piantieri's ultimate termination, especially against the backdrop of Defendants' aggressive battle with the DOE to secure religious exemptions to vaccination for UFT members under DOE's COVID policy. *See* Dkt. No. 44 ¶¶ 5–11.

Because of these fatal deficiencies, Piantieri's Title VII failure-to-accommodate claim must be DISMISSED with prejudice, and the Court need not address the other elements.

## V. THE COURT DECLINES TO ENTERTAIN THE REMAINING PENDENT NYCHRL CLAIMS

Having dismissed all federal claims, and to the extent that resolving the NYCHRL failure-to-accommodate claim would require an assessment of reasonableness of the requested accommodation and undue hardship, which neither party has briefed, the Court declines to exercise supplemental jurisdiction over those claims.[8] District courts may "decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Court sees no reason to depart from this general rule in the present case, where the federal law claims have been eliminated and a federal court would otherwise be compelled to hold a trial on a single state law claim. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (concluding that since "all that remains of this case is a state law claim[,] [i]t would be an inappropriate exercise of pendent jurisdiction and a waste of federal judicial resources for the District Court to hold a trial on a purely state claim").[9] Piantieri's supplemental NYCHRL claims on failure to accommodate and failure to engage in cooperative dialogue are accordingly DISMISSED.

[8] To the extent that Plaintiff also mounts a "failure to engage in a cooperative dialogue" NYCHRL claim—which he seems to make conclusory and passing reference to in the Complaint—that, too, is dismissed for the same reasons. *See* Compl. ¶¶ 61–62, 75, 80, 83–85.

[9] There are no facts in the Complaint that plausibly make out a basis for subject matter jurisdiction based on diversity (*i.e.*, no amount of controversy alleged and no pleadings related to citizenship).

## CONCLUSION

Piantieri may well "strongly believe[]" he was denied an accommodation because he is Catholic. *See* Opp. at 6. But Piantieri's subjective belief that he was discriminated against, without sufficient evidence to support that belief, is not enough to defeat summary judgment and reach the jury. Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Title VII claims and his NYCHRL discrimination claim. Plaintiff's remaining NYCHRL reasonable accommodation claims are DISMISSED without prejudice to refiling them in state court.

The Clerk of the Court is respectfully directed to terminate Dkt. Nos. 41, 55, and 56, enter judgment for Defendants, and terminate this case.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge